521 So.2d 780 (1988)
Abner T. BROWN, Plaintiff-Appellant,
v.
CITY OF MONROE, Defendant-Appellee.
No. 19362-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
*781 Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellant.
Carl Van Sharp, Asst. City Atty., Monroe, for City of Monroe.
Before HALL, C.J., and JASPER E. JONES and LINDSAY, JJ.
JASPER E. JONES, Judge.
In this workers' compensation action the plaintiff, Abner T. Brown, appeals a judgment sustaining the exception of prescription interposed by the defendant, the City of Monroe. We reverse and render judgment in favor of the plaintiff and remand.
The plaintiff retired from the Monroe Fire Department on February 16, 1983, after 48 years service, when he was unable to perform his duties at fires because of chest pains. Mr. Brown brought this action for workers' compensation benefits on December 5, 1984, alleging that he was totally and permanently disabled due to heart disease. He also sought to recover unpaid medical expenses and penalties and attorney's fees.
The City first responded with dilatory exceptions which it later dismissed. Next the City answered and filed an exception of prescription. This exception was referred to the merits and trial was held. The district judge then rendered judgment sustaining the exception. This appeal followed.
The issue before us is whether the plaintiff's claim has prescribed under LSA-R.S. 23:1031.1 E. This section provides:
All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
The parts of § 1031.1 E are construed as conjunctive and the existence of all three are necessary for the prescription period provided in the statute to commence. Thornell v. Payne and Keller, Inc., 442 So.2d 536 (La.App. 1st Cir.1983), writ den., 445 So.2d 1231 (La.1984); Naquin v. Johns-Manville Sales Corp., 456 So.2d 665 (La.App. 5th Cir.1984).
The trial judge found that all three of the conditions to begin the running of prescription existed no later than January, 1983, and that, therefore, this action was prescribed. These findings of the trial judge that the disease had manifested itself *782 and that Brown was disabled by the disease are fully supported by the record. However, the finding that plaintiff knew or had reasonable grounds to believe his disease was occupationally related is clearly wrong. Arceneaux v. Domingue, 365 So. 2d 1330 (La.1978).
The plaintiff testified that he had no knowledge he had heart disease until his physician, Dr. Christian Ulrich, discussed it with him in October, 1984, after he had been hospitalized.
Dr. Ulrich testified that he suspected that Brown had heart disease in December, 1982, when Brown came to him complaining of chest pain during exertion. This suspicion could not be confirmed until October, 1984, when a Holter Study was performed on Brown while he was hospitalized for anemia. This test had not been performed earlier because Brown refused to have it done due to concerns about whether his medical insurance would cover the expense of the test. Dr. Ulrich testified that he would have discussed his suspicions of heart disease with Brown when they arose.
This convinces us, as it convinced the trial judge, that Brown knew or should have known of his disease by January, 1983. However, this does not necessarily commence the running of prescription. § 1031.1 E(c) requires that the claimant know or have reasonable grounds to believe that his disease is occupationally related.
The record does not show that Brown knew or had reasonable grounds to believe his heart disease was occupationally related until October, 1984. This is shown by the testimony of Dr. Ulrich who testified as follows by deposition:
Q. You never at anytime before you performed a Holter Study, you never told Mr. Brown or Mrs. Brown that you thought his possible heart disease was occupationally related, did you?
A. No, I'm sure not.
There is no evidence of any source of information, other than Dr. Ulrich, which did or should have given Brown knowledge that his disease was occupationally related. As the party pleading prescription it was the City's burden to prove the facts to establish it. Langlinais v. Guillotte, 407 So.2d 1215 (La.1981). The City has not borne this burden and its exception must be overruled.
We now consider the merits of this claim. An employee disabled by an occupational disease is entitled to receive workers' compensation benefits. LSA-R.S. 23:1031.1 A.
Dr. Ulrich's uncontradicted testimony clearly shows that Brown is totally and permanently disabled by heart disease and has been so disabled since his retirement. Dr. Ulrich further testified that the stress associated with plaintiff's job "... would certainly be a consideration" in his heart disease. This evidence and the unrebutted presumption of causation established by LSA-R.S. 33:2581[1], which is applicable here, establish that plaintiff's heart disease resulted from his employment. Plaintiff is entitled to weekly benefits for total and permanent disability from February 16, 1983. It has been stipulated that the proper amount for such benefits is $204.00 per week.
The plaintiff is also entitled to recover his medical expenses for treatment of his heart disease. LSA-R.S. 23:1203; Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La.App. 2d Cir.1984).
*783 The plaintiff has placed in evidence numerous medical bills; however, the record contains little evidence to connect the charges represented by these bills to his heart disease. In reviewing the record we find that the following charges were shown to be for treatment of the heart disease:

Dr. Christian Ulrich $105.00
St. Francis Medical Center 185.00
 _______
 TOTAL $290.00

The plaintiff is entitled to recover these medical expenses.
We will remand this matter for a determination of whether the remaining expenses are for treatment of plaintiff's compensable occupational disease.
We decline to allow penalties and attorney's fees as requested by plaintiff for the reason that the City's failure to pay benefits was not arbitrary or capricious based upon the information available to it at that time. Cf. Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App. 2d Cir.1984) (Employer's refusal to pay benefits is judged upon facts known to it at the time of its action.) The facts available to the City gave it reason to believe any claim against it had prescribed.
For the foregoing reasons the judgment of the district court is reversed and it is ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Abner T. Brown, and against the defendant, City of Monroe, for workers' compensation benefits for total and permanent disability in the amount of $204.00 per week commencing February 16, 1983, with legal interest upon each weekly benefit from the date due until paid and for medical expenses in the amount of $290.00 with legal interest on $105.00 of this amount from December 23, 1982, until paid and legal interest on the remaining $185.00 from October 15, 1984, until paid.
The case is remanded for determination of whether the remaining medical expenses are recoverable.
REVERSED and RENDERED IN PART and REMANDED IN PART.
NOTES
[1] § 2581. Development of heart and lung disease during employment in classified fire service; occupational disease.

Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.